**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WILLIAM RIGGS,

               Plaintiff,

     v.

KROTO, INC., D/B/A ICANVAS,

               Defendant.

Case No.  1:20-cv-05822

Hon. Thomas M. Durkin

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF**
**ATTORNEYS' FEES AWARD, EXPENSE REIMBURSEMENT,**
**AND SERVICE AWARD TO REPRESENTATIVE PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY ...................................................3

III.   ARGUMENT ........................................................................................................5

     A.    The Requested Attorneys' Fee Award is Reasonable and Appropriate...................5

         1.   Counsel Reasonably Spent 237.55 Hours Prosecuting the Litigation…………...8

         2.   Counsel's Hourly Rates Are Reasonable............................................................8

         3.   Counsel Assumed the Risk of Non-Payment ......................................................9

         4.   The Quality of Counsel's Performance ............................................................10

         5.   The Complexity, Length, and Expense of the Litigation ..................................11

         6.   The Stakes of the Litigation...............................................................................12

VI.   THE REQUESTED COSTS AND EXPENSES AWARD IS REASONABLE AND APPROPRIATE ................................................................................................12

VII.  THE REQUESTED SERVICE AWARD IS REASONABLE AND APPROPRIATE....12

VIII.  CONCLUSION ..................................................................................................144

# TABLE OF AUTHORITIES

## Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 Nos. 07-CV-2898, 09-CV-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)........................ 13

*Blum v. Stenson*,
 465 U.S. 886 (1984) ...................................................................................................... 8

*Carlin v. DairyAmerica, Inc.*,
 2019 U.S. Dist. LEXIS 78026 (E.D. Cal. May 8, 2019) ...................................................... 7

*Cook v. Niedert*,
 142 F.3d 1004 (7th Cir. 1998)..................................................................................... 12, 13

*Crawford Lumber Co. v. Interline Brands, Inc.*,
 No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015)............................................ 13

*Donovan v. Estate of Frank E. Fitzsimmons*,
 778 F.2d 298 (7th Cir. 1985)............................................................................................ 11

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
 212 F.R.D. 400 (E.D. Wis. 2002)..................................................................................... 12

*Gutierrez v. Wells Fargo Bank, N.A.*,
 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015) ...................................................... 8

*Hapka v. Carecentrix, Inc.*,
 2018 U.S. Dist. LEXIS 68186 (D. Kan. Feb. 15, 2018) ........................................................ 7

*Harman v. Lyphomed, Inc.*,
 945 F.2d 969 (7th Cir. 1991)............................................................................................. 7

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
 80 F. Supp. 3d 838........................................................................................................... 9

*In re Trans Union Corp. Privacy Litig.*,
 629 F.3d 741 (7th Cir. 2011)............................................................................................. 9

*Kolinek v. Walgreen Co.*,
 311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................................ 13

*Silverman v. Motorola Solutions, Inc.*,
 739 F.3d 956 (7th Cir. 2013)............................................................................................. 9

*Spano v. Boeing Co.*,
2016 U.S. Dist. LEXIS 161077 (S.D. Ill. Mar. 31, 2016) ......................................................9

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007)........................................................................................................6

*Yvonne Mart Fox v. Iowa Health Sys.*,
2021 U.S. Dist. LEXIS 40640 (W.D. Wis. Mar. 4, 2021) ......................................................10

## I.    INTRODUCTION

Plaintiff William Riggs ("Plaintiff") through his undersigned counsel, respectfully moves this Court for entry of an Order approving: (1) Class Counsel's requested attorneys' fees award of $126,588, which is 33 percent of the Settlement Fund or 36.5 percent of the Settlement Fund net of administration costs (estimated to be $36,711); (2) expense reimbursement of $8,058.40; and (3) a service award to the Representative Plaintiff of $5,000.[1]

This data breach class action arises out of the alleged negligence by Defendant Kroto, Inc. d/b/a iCanvas ("iCanvas" or "Defendant") in failing to safeguard and protect iCanvas' customers' Personally Identifiable Information ("PII") from unauthorized access and disclosure.  As a result, iCanvas experienced a security incident whereby unauthorized third parties may have accessed, via iCanvas' website, certain PII for those customers who made a purchase on iCanvas' website from May 10, 2020 to May 28, 2020 (the "Data Incident"). *See* Class Settlement Agreement and Release (hereinafter, "SA"), § 1 (ECF No. 44-1).  Plaintiffs allege that the unauthorized third parties exfiltrated everything they needed to illegally use iCanvas' customers' payment cards to make fraudulent purchases, and that the stolen names and card information may be for sale on the dark web where criminals can acquire PII for malicious activity and identity theft.

Following a day-long mediation session on January 7, 2021 before mediator Bruce A. Friedman, Esq., the Parties reached a resolution that—if accepted—resolves the litigation and provides substantive relief to the approximately 7,672 Settlement Class Members ("Class Members").  *See* SA, ¶ 10.1(b).

The Settlement is an excellent resolution of this high-risk, complex litigation and provides

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Class Settlement Agreement and Release dated June 1, 2021 (the "Settlement Agreement" or "SA"), filed on June 7, 2021. ECF No. 44-1.

substantial monetary benefit to Class Members: Class Members who do not Opt-Out will *automatically* receive a Basic Award payment (regardless of whether he or she experienced any fraudulent or unauthorized charges on his or her credit or debit card) or may make a Settlement Claim for a Reimbursement Award payment. SA, ¶¶ 2.3 - 2.5.

Through Class Counsel's efforts, a Settlement Fund of $383,600 has been created which shall pay for: (1) all payments of valid Reimbursement Award claims from Class Members and all Basic Award payments; (2) the costs of claims administration, estimated to be $36,711, and a claims referee to resolve any disputed claims; (3) attorneys' fees and costs to be determined by the Court; and (4) a Class Representative service award (the "Settlement"). *See id*., ¶¶ 1.43, 2.1. Class Members will have the option of claiming a Reimbursement Award or receiving the automatic Basic Award. *Id.* at ¶¶ 2.3-2.5. The Reimbursement Award can be up to $2,500 and requires documentation supporting the reimbursement request. *Id.* at ¶ 2.5. The Basic Award amount depends on how many people claim a Reimbursement Award and the amounts of those claims, but there is an aggregate cap of $10,000 for the Reimbursement Awards. *Id.* at ¶ 2.4. If there are sufficient valid Reimbursement Award claims to meet the $10,000 cap, and the Court awards attorneys' fees, expenses and Plaintiff's service award as requested, Class Counsel estimate the Basic Awards will be approximately $25 each. Joint Declaration of M. Anderson Berry and Carl V. Malmstrom in Support of Plaintiffs' Motion for Approval of Attorneys' Fees Award, Expense Reimbursement, and Service Award to Representative Plaintiff ("Joint Decl."), ¶ 20. If any funds remain in the Settlement Fund after distribution to Class Members, the balance will be distributed to a *cy pres* recipient to be selected by the Parties and approved by the Court. *Id.* at ¶ 7.9.

In addition, to help protect consumers, iCanvas agreed to take extensive and costly steps to secure current and future customers' PII. Among other things, iCanvas has agreed to further

develop, implement, and maintain a comprehensive information security program that is reasonably designed to protect the security, integrity, and confidentiality of PII that iCanvas collects or obtains from consumers. *See* SA, ¶ 2.7. Together the Settlement Fund and the corrective measures Defendant is taking, and will continue to take, provide Class Members with both improved security of their PII and compensation for the damages they sustained as a result of the Data Incident.

For their efforts in achieving these results, Class Counsel seek an award of $126,588 in attorneys' fees, which is 33 percent of the Settlement Fund or 36.5 percent of the Settlement Fund net of administration expenses (estimated to be $36,711), and reimbursement of their reasonable and necessary expenses totaling $8,058.40. Additionally, Class Counsel also seek a service award of $5,000 for the Representative Plaintiff in recognition of the time and effort he incurred and the risk he undertook in pursuing claims that benefited the Settlement Class. *See* SA, § 9.2.

As discussed below, the fee request is reasonable when considered under the applicable Seventh Circuit standards, and is well within the normal range of awards in contingent-fee class actions in this Circuit. Under a lodestar calculation, the requested award of fees represents a negative multiplier of 0.958 applying Class Counsel's current and customary hourly rates. *See* Joint Decl., ¶ 34. Moreover, the requested $5,000 service award for the Representative Plaintiff is reasonable, as well as standard, for this type of action, and should be approved.

## II.    FACTUAL AND PROCEDURAL HISTORY

iCanvas specializes in selling canvas image and art prints through its website. *See* First Amended Complaint ("FAC"), ¶ 1, ECF No. 25. Defendant uses an in-house ecommerce platform to process customer PII. *Id.*

On or about June 24, 2020, iCanvas began notifying customers and state Attorneys General

about the Data Incident whereby hackers stole customers' PII, including names, email addresses, addresses, payment card account numbers, card expiration dates, card verification codes, and telephone numbers. *See id.*, ¶ 2. The hackers got everything they needed to illegally use payment cards to make fraudulent purchases and to steal customers' identities by selling the information on the dark web. *See id.*, ¶ 3.

Plaintiff Riggs filed the initial complaint on July 14, 2020 and the FAC on October 5, 2020, alleging causes of action for negligence, unjust enrichment, declaratory judgment, and violation of Florida's Deceptive and Unfair Trade Practices Act. *See id.*, ¶¶ 60-99. More specifically, Plaintiff alleged that iCanvas' customers' PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect customers' data, and that, in addition to its failure to prevent the Data Incident, Defendant failed to detect and report the breach for an unreasonable time. *Id.*

As a result, Plaintiff alleged that he and similarly situated customers (*i.e.*, Class Members) suffered injury as a result of Defendant's conduct, including: (i) lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time; and (iv) the continued risk to their PII, which Plaintiff alleged may remain available on the dark web for individuals to access and abuse, and remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

The Parties agreed to participate in mediation and, prior to doing so, informally exchanged discovery on a variety of topics including details of Plaintiff Riggs' injuries as well as the class

allegations. The Parties also drafted and exchanged mediation briefs prior to mediation. At the all-day mediation with Bruce A, Friedman, Esq., on January 7, 2021, the Parties agreed in principle to the terms of a Settlement, and spent the next few weeks negotiating the details of the Settlement Agreement and its exhibits.

The Parties subsequently executed the Settlement Agreement on June 1, 2021, and moved for preliminary approval on June 7, 2021. This Court granted preliminary approval on July 8, 2021. ECF No. 48.

The Class Notice advised Class Members that Class Counsel "will request the Court's approval of an award for attorneys' fees up to 33 percent of the Settlement Fund (or up to $126,588), plus reasonable costs and expenses (not to exceed $10,000), which shall be paid from the Settlement Fund." SA, ¶ 2.6. The objection deadline is September 21, 2021.

As of the date of this filing, Class Counsel is not aware of any objections by Class Members to any aspect of the Settlement, including the request for attorneys' fees, reimbursement of expenses or service award for the Representative Plaintiff. *See* Joint Decl., ¶ 27.

## III. ARGUMENT

### A. The Requested Attorneys' Fee Award is Reasonable and Appropriate

Under the "common fund" or "common benefit" doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."). This rule is equitable in nature and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."

*Boeing Co.*, 444 U.S. at 478. *See also In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 745–46 (7th Cir. 2018) ("Fee awards for class counsel are part of a constructive common fund because they are a benefit to the class"); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) ("value of the settlement" is "defined as the sum of the awards to the class and to its lawyers.").

"In assessing the reasonableness of an attorney fee award for a class action settlement, district courts should 'do their best to award counsel the market price for legal services, in light of the risk of non-payment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). Relevant factors include the risk of non-payment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case. *Id.* at 693.

The Seventh Circuit has held that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis. The typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (upholding the award of 38 percent of a $20 million settlement). District Courts within the Seventh Circuit "regularly award percentages of 33.33% or higher to counsel in class action litigation." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 at *35 (S.D. Ill. Dec. 13, 2018). *See also, Behrens v. Landmark Credit Union*, No. 17-cv-101-jdp, 2018 U.S. Dist. LEXIS 106358 at *16 (W.D. Wis. June 26, 2018) ("And generally, a 33 to 40 percent contingency fee is considered consistent with the market rate and reasonable."); *Martin v. Caterpillar Inc.*, No. 07-CV- 1009, 2010 U.S. Dist. LEXIS 145111, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) ("[C]ourts in the Seventh Circuit award attorney fees 'equal to

approximately one-third or more of the recovery.' . . . The Seventh Circuit itself has specifically noted that 'the typical contingent fee is between 33 and 40 percent.'") (citation omitted).

Class Counsel's requested attorneys' fees award of $126,588 represents 33 percent of the Settlement Fund or 36.5 percent of the Settlement Fund net of administration costs (estimated to be $36,711). Under either measure, Class Counsel's request is within the range of 33 to 40 percent commonly awarded by courts in the Seventh Circuit in common fund cases and is therefore reasonable.

The sworn declarations of M. Anderson Berry (Arnold Law Firm) and Rachele R. Byrd (Wolf Haldenstein Adler Freeman & Herz LLP) submitted herewith attest to the total time each firm spent litigating this matter and the hourly rates from each firm. *See* Berry Decl., ¶¶ 12-13; Byrd Decl., ¶ 6. Class Counsel incurred a total cumulative lodestar of $132,078.50. Class Counsel have spent a cumulative 237.55 hours litigating the case through August 26, 2021. The requested fee award would provide a negative lodestar multiplier of 0.958.

The quality of the work performed by Class Counsel and the results achieved support the award of a lodestar multiplier. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991) (noting that "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four have been approved"). This factor weighs in favor of approving the requested award of attorneys' fees because there is a negative lodestar multiplier. *See, e.g.*, *Hapka v. Carecentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68186, at *5 (D. Kan. Feb. 15, 2018) (fee award implicating "a negative multiplier (0.87) on Class Counsel's lodestar – is inherently reasonable."); *Carlin v. DairyAmerica, Inc.*, No. 1:09-cv-04300AWI-EPG, 2019 U.S. Dist. LEXIS 78026, at *44 (E.D. Cal. May 8, 2019) (citing *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at *23

(E.D. Cal. June 11, 2012) for the proposition that "a negative lodestar multiplier strongly supports the reasonableness of the fee request").

### 1. Counsel Reasonably Spent 237.55 Hours Prosecuting the Litigation

Class Counsel has worked diligently to advance the interests of Representative Plaintiff and the other Class Members' interests. Class Counsel engaged in informal discovery and investigation of the Data Incident, which included reviewing written documents, talking with victims of the Data Incident, and investigating the harm done to the victims of the Data Incident. Class Counsel also amended the Complaint, prepared for and attended mediation, and negotiated a complex Settlement Agreement. Class Counsel also solicited bids for claims administrators, moved for argued at the motion for preliminary approval, drafted and filed this motion for fees, and monitored the Notice Program. Class Counsel will also draft a motion for final approval and attend the final approval hearing. As such, Class Counsel diligently and efficiently represented the Class in this matter from the beginning to the present and Class Counsel will continue to do so until final approval of the Settlement.

### 2. Counsel's Hourly Rates Are Reasonable

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Id*. at 895 n.11. Class Counsel's lodestar is calculated using rates that have been accepted in numerous other class action cases. *See, e.g.*, Berry Decl., ¶ 16; Byrd Decl., ¶ 9.

Class Counsel's rates also compare very favorably with rates approved by other trial courts in class action litigation and with what attorneys of comparable skill charge in similar areas of specialization. *See Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 U.S. Dist.

LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) (finding reasonable rates in a consumer fraud class action of between $475-$975 for partners, $300-$490 for associates, and $150-430 for paralegals); *Spano v. Boeing Co.*, No 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161077, at *11 (S.D. Ill. Mar. 31, 2016) (approving hourly rates of $460-$998 for attorneys, $309 for paralegals, and $190 for legal assistants). Class counsels' rates have been approved in other data breach cases, and Class Counsel have submitted sworn declarations attesting to their hourly rates and that their hourly rates charged here are comparable to those charged and approved by courts in other cases. Berry Decl., ¶ 16; Byrd Decl., ¶ 9.

### 3. Counsel Assumed the Risk of Non-Payment

Courts emphasize the severity of the financial risk class counsel assumed in taking on a class action when determining the reasonableness of a fee request. *In re Dairy Farmers of Am., Inc.,* 80 F.Supp.3d 838, 847 (N.D. Ill. 2015); *see also Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of non-payment. The greater risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) ("[I]f the market-determined fee for a sure winner were $1 million the market determined fee for handling a similar suit with only a 50% chance of a favorable outcome should be $2 million.").

Class Counsel initiated the lawsuit knowing that it would require expenditure of significant time, effort, and money in order to achieve a successful resolution to the matter. There was uncertainty in the outcome of the case as Class Counsel knew that Defendant could file a motion to dismiss. Class Counsel would have to prevail over that motion and at class certification, trial, and potentially on appeal. Class certification in a data breach case is never guaranteed and

could have presented a significant hurdle for Plaintiff in this matter. *Yvonne Mart Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *13-14 (W.D. Wis. Mar. 4, 2021) ("breach cases . . . are particularly risky, expensive, and complex.") (quoting *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019)). As such, the significant risk that Class Counsel accepted by taking on this matter on a contingency basis weighs in favor of approval of this motion.

### 4. The Quality of Counsel's Performance

Class Counsel achieved an automatic benefit for most of the Class Members and an easy to claim benefit available to those Class Members who experienced significant out-of-pocket losses as a result of the Data Incident. The Settlement is a fair, reasonable, and adequate remedy for Class Members when compared to the facts and law at issue in this matter. Class Counsel represented the Class at various stages of litigation including: (1) drafted the initial complaint and the first amended complaint; (2) engaged in discovery and investigation of the Data Incident; (3) interviewed plaintiff and other victims of the Data Incident and provided guidance to Class Members; and (4) engaged in a comprehensive arm's-length settlement negotiation with Defendant at an all-day mediation with a mediator.

These efforts resulted in a Settlement with benefits to the Class that they would not otherwise have. The benefits include an *automatically-paid* benefit (the "Basic Award") and an option to claim a Reimbursement Award. This award will allow eligible Class Members to claim an award of up to $2,500 for costs related to the Data Incident, such as (1) unreimbursed or unauthorized charges, (2) up to three hours of lost time spent at $20 per hour to help mitigate the losses caused by the Data Incident, and (3) out of pocket expenses.

Further, the Settlement requires Defendant to take protective measures to prevent similar

release of PII in the future. Defendant is required to develop, implement, and maintain a comprehensive information security program that is reasonably designed to protect the security, integrity, and confidentiality of PII that Defendant collects or obtains from consumers.

Class Counsel negotiated these terms with, and obtained the results for the Class from, iCanvas who mounted a strong defense with experienced data breach attorneys. The Settlement provides real benefits that will be available to Settlement Class Members in the very near future, rather than years from now, because of the efficient settlement of the case. This is a further enhancement to the value of the Settlement to the Class Members. *See Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 n.3 (7th Cir. 1985) (recognizing that at a prime interest rate of 12.5 percent of a $2 million settlement sum today is worth the same as a $3.6 million recovery five years from now). As such, this factor weighs in favor of approval of this motion.

### 5. The Complexity, Length, and Expense of the Litigation

Data breach class action lawsuits are complex, risky, and expensive to litigate. Class Counsel were aware that pursuing this case beyond settlement would be lengthy and expensive – it would require discovery, briefing, argument, trial, and potential appeals. All of this would require hundreds, or perhaps thousands, of hours, which would result in significant costs. Ultimately, Class Counsel accrued 237.55 hours litigating the matter up to this point. Class Counsel coordinated to avoid duplicating hours. There is still work to be done in the case as well. For example, Class Counsel will spend additional time drafting and filing Plaintiff's motion for final approval of the Settlement, preparing for and appearing at the final fairness hearing, overseeing claims administration, and resolving any appeals. As such, this factor weighs in favor of approval of Plaintiff's attorneys' fees request.

### 6. The Stakes of the Litigation

Class action lawsuits are high stakes litigation and data breach class action lawsuits come with their own set of uncertainties. The Class Members' claims could have faced a number of defenses such as the possibility that the court would dismiss some or all of the claims, decline to certify the Class, or that Plaintiff would not prevail at trial. This factor weighs in favor of granting this motion because there was an uncertain nature of the lawsuit at the beginning of the case, yet Class Members are receiving the benefits of the Settlement.

## VI. THE REQUESTED COSTS AND EXPENSES AWARD IS REASONABLE AND APPROPRIATE

Pursuant to a market-based approach, attorneys who generate a benefit for the class are entitled to recover reasonable litigation expenses incurred to advance the matter. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 412 (E.D. Wis. 2002). Plaintiff seeks reimbursement of $8,058.40 for costs and expenses associated with furthering this litigation. The costs and expenses include court costs, costs to the client, postage, service of process, research fees, and mediation fees. *See* Berry Decl., ¶ 19; Byrd Decl., ¶ 11. The requested costs and expenses are less than the amount agreed to by the Parties and are certainly reasonable and consistent with what the market would award in a private setting.

## VII. THE REQUESTED SERVICE AWARD IS REASONABLE AND APPROPRIATE

Representative plaintiff service awards encourage members of a class to become class representatives and reward individual efforts taken on behalf of a class. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (awarding $25,000). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

The requested award of $5,000 to the Representative Plaintiff is reasonable, justified, and accords with common practice. Representative Plaintiff Riggs stepped up and volunteered to take on the responsibilities, risks, and scrutiny of bringing a class action lawsuit. This benefited the entire Class as without Representative Plaintiff Riggs there may not have been a class action lawsuit. As described in his declaration, Representative Plaintiff Riggs was actively involved throughout the litigation by: providing information for the Complaint and FAC, participating in interviews, reviewing filings related to the litigation, and reviewing the Settlement Agreement. Declaration of Plaintiff William Riggs in Support of Plaintiff's Unopposed Motion for Approval of Attorney's Fees Award, Expense Reimbursement, and Service Award to Representative Plaintiff, ¶ 9. Representative Plaintiff Riggs was willing to sit for a deposition and to perform duties as the Court may have required if the case continued. *Id.*, ¶ 10. Further, plaintiffs in data breach cases risk further losses of privacy by stepping forward and being named, which justifies a reasonable service award.

Courts regularly award service awards in excess of $5,000. *See, e.g., Crawford Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (approving an award of $25,000); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07-CV-2898, 09-CV-2026, 2012 WL 651727 at 16 (N.D. Ill. Feb. 28, 2012) (awarding a $25,000 award to each of seven plaintiffs); *Cook*, 142 F.3d at 1016 (awarding award of $25,000); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding $5,000 where the case did not proceed past the earliest stages of discovery). As such, the requested service award of $5,000 is reasonable and warranted considering Representative Plaintiff's participation and willingness to undertake the responsibilities and risks attendant with bringing this class action lawsuit.

## VIII.   CONCLUSION

The requested attorneys' fees, costs and expenses, and service award are reasonable and appropriate and should be approved by this Court. Plaintiff, individually and on behalf of the Class Members, by and through Class Counsel, prays that this Court enter an order: (a) granting Plaintiff's request for attorneys' fees in the amount of $126,588; costs and expenses in the amount of $8,058.40; and a service award for Representative Plaintiff Riggs in the amount of $5,000; and (b) granting such other and additional relief that this Court may deem just and appropriate.

Dated:  August 31, 2021

Respectfully submitted,

*/s/ Carl V. Malmstrom*

Carl V. Malmstrom
*malmstrom@whafh.com*
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC**
111 W. Jackson Blvd.,
Suite 1700 Chicago, Illinois 60604
Tel: 312/984-0000
Fax: 212/545-4653

M. Anderson Berry
*aberry@justice4you.com*
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, California 95825
Tel: (916) 777-7777
Fax: (916) 924-1829

Rachele R. Byrd
*byrd@whafh.com*
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Tel: (619)239-4599
Fax: (619)234-4599

*Counsel for Plaintiff and the Proposed
Class*